IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Richard A. Christopher III,      :
          Petitioner     :
                         :
     v.                : No. 1880 C.D. 2019
                         : SUBMITTED: February 12, 2021
Pennsylvania Parole Board,    :
          Respondent   :

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
              HONORABLE ANNE E. COVEY, Judge
              HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                      FILED: March 17, 2021

      Petitioner Richard A. Christopher III (Christopher) petitions for review of Respondent Pennsylvania Parole Board's (Board) November 26, 2019 ruling. In this ruling, the Board affirmed its February 26, 2019 decision recommitting Christopher as a convicted parole violator (CPV) to serve 12 months of backtime and recalculating the maximum date on multiple carceral sentences that were imposed upon him in 2014 as April 16, 2026. After thorough review, we quash Christopher's Petition for Review on jurisdictional grounds.

## I. Facts and Procedural History

      On August 28, 2014, Christopher pled guilty in the Court of Common Pleas of Adams County (Adams County) to one count each of access device fraud and criminal conspiracy. Certified Record (C.R.) at 1. In conjunction with this guilty plea, Adams County also revoked Christopher's probationary sentences relating to two previous convictions, for terroristic threats with intent to terrorize another and simple assault, and imposed an aggregate sentence of 27 to 120 months in state

prison. *Id.* at 1-2. On October 14, 2014, Christopher pled guilty in the Court of Common Pleas of York County (York County) to one count each of possession with intent to deliver and criminal conspiracy, for which he received an aggregate carceral sentence of 15 to 30 months in state prison, to be served concurrently with his Adams County sentence. *Id.* The Board subsequently paroled Christopher on May 23, 2016, at which point the maximum dates on his York County and Adams County sentences were, respectively December 26, 2016, and August 3, 2023. *Id.* at 5-9.

On August 9, 2018, Christopher was arrested in Berwick Township, Adams County, Pennsylvania, and was charged with driving under the influence and other, related offenses. *Id.* at 31-36, 39. Five days later, on August 14, 2018, Christopher was arrested in Penn Township, York County, Pennsylvania, and, as with the previous incident, was charged with driving under the influence and other, related offenses. *Id.* at 15-23, 39. The following day, August 15, 2018, the Board issued a warrant to commit and detain Christopher on account of these arrests. *Id.* at 24, 39. On August 16, 2018, Christopher waived his right to a detention hearing before the Board, as well as to representation by counsel. *Id.* at 26-27. The Board subsequently ordered Christopher to be detained pending resolution of the charges that had been lodged against him. *Id.* at 45.

On December 5, 2018, Christopher pled guilty in York County to 1 count each of driving under the influence and driving while operating privilege is suspended or revoked, and received an aggregate carceral sentence of 72 hours to 6 months, with credit for 3 days spent in presentence confinement. *Id.* at 55. On December 14, 2018, Christopher pled guilty in Adams County to 1 count each of driving under the influence and driving while operating privilege is suspended or revoked, and

received an aggregate carceral sentence of 12 to 24 months, with credit for 10 days spent in presentence confinement. *Id.* at 59-60.

The Board then issued a notice of charges and hearing, which Christopher received on December 20, 2018. *Id.* at 67. That same day, Christopher waived his right to a parole revocation hearing, as well as to counsel, and admitted to the veracity of his guilty pleas. *Id.* at 69-72. On February 26, 2019, the Board issued a decision through which it recommitted Christopher to serve 12 months of backtime as a CPV on his August 2014 Adams County sentence, gave him one day's worth of backtime credit, awarded him no credit for time served at liberty on parole (*i.e.*, "street time"), and recalculated the maximum date on his August 2014 Adams County sentence as April 16, 2026, as well as his reparole eligibility date as February 4, 2020. *Id.* at 114-17.

On March 4, 2019, Christopher administratively appealed the Board's February 26, 2019 decision. *Id.* at 118-22. Christopher argued that the Board had miscalculated his maximum date, as his parole officer had allegedly told Christopher that the Board "[was not] going to take [his] street time" as a consequence of his parole violation. *Id.* at 118-19. In addition, Christopher claimed that the Board had incorrectly calculated his reparole eligibility date, awarded him too little backtime credit, and had imposed upon him backtime that exceeded the amount permitted under the Board's guidelines. *Id.* Christopher then sent the Board a follow-up letter on April 6, 2019, in which he raised substantially similar arguments. *Id.* at 121-22.

On November 26, 2019, the Board denied Christopher's administrative appeal and affirmed its February 26, 2019 decision in full. *Id.* at 123-24. Christopher then

3

sent a petition for review to Adams County, which was docketed on December 30, 2019. Adams County then dismissed this petition for review on January 3, 2020.[1]

On January 23, 2020, Christopher filed a *pro se* petition for review with our Court, under docket number 58 M.D. 2020 as an original jurisdiction matter. On January 29, 2020, we dismissed that petition for review via a *per curiam* order for lack of original jurisdiction. *Com. v. Christopher* (Pa. Cmwlth. No. 58 M.D. 2020), Ord., 1/29/20, at 1. On February 7, 2020, Christopher requested reconsideration of this dismissal, explaining that he had incorrectly filed his initial petition for review in Adams County, but that he had made that erroneous filing in a timely manner. *Christopher*, Application for Reconsideration at 1. We then granted reconsideration via another *per curiam* order on February 24, 2020. In relevant part, this order read:

> It appearing that [Christopher] seeks appellate review of a decision of the Pennsylvania [Parole] Board . . . mailed on November 26, 2019, this matter is transferred to this Court's appellate jurisdiction at No. 1880 [C.D.] 2019. The Court preserves the filing date of December 30, 2019, the date [Christopher] mistakenly filed a petition for review in . . . Adams County.
>
> [Christopher] is directed to file and serve an amended petition for review, naming the Pennsylvania [Parole] Board . . . as respondent within 30 days from the exit date of this order. [**Christopher**] **shall file copies of mailing slips to show when he mailed his petition for review to** [**Adams County**] **or otherwise explain the delay in filing his petition for review**.

*Christopher*, Ord., 2/24/2020, at 1 (emphasis added).

Christopher complied with this order by filing the instant *pro se* Petition for Review under docket number 1880 C.D. 2019 on March 12, 2020; even so, he did

---

[1] The facts pertaining to Christopher's filing of his initial petition for review with Adams County are drawn from the relevant criminal records, which can be found under docket number CP-01-CR-0001052-2018. We are permitted to take judicial notice of this information. *See, e.g.*, Pa. R.E. 201(b)(2); *Doxsey v. Com.*, 674 A.2d 1173, 1174 (Pa. Cmwlth. 1996).

not provide evidence or an explanation therein establishing that he had timely filed his initial petition for review with Adams County. On April 20, 2020, we appointed the Public Defender of Northampton County to represent Christopher in this matter. We subsequently vacated this order on September 22, 2020, and directed the Public Defender of York County to assume responsibility for representing Christopher.

## II. Discussion

Under other circumstances, we would consider the merits of the arguments put forth by Christopher. However, we are without jurisdiction to do so, as Christopher failed to file his initial petition for review in Adams County within the legally allotted time window.[2]

Under the Pennsylvania Rules of Appellate Procedure, a party must petition for appellate review of a quasijudicial order, such as the Board's November 26, 2019 ruling, within 30 days of that order's entry. Pa. R.A.P. 1512(a)(1). A party's failure to abide by this requirement deprives the relevant appellate court of jurisdiction over the affected matter. *St. Clair v. Pa. Bd. of Prob. & Parole*, 493 A.2d 146, 154 (Pa. Cmwlth. 1985). This stricture is loosened somewhat for inmates, in recognition of the rather singular impediments posed by incarceration to *pro se* litigants' ability to access the court system.

> The situation of prisoners seeking to appeal without the aid of counsel is unique. Such prisoners cannot take the steps other litigants can take to monitor the processing of their notices of appeal and to ensure that the court clerk receives and stamps their notices of appeal before the 30–

---

[2] While the Board does not mention the question of timeliness, Christopher preemptively addressed it in his brief. *See* Christopher's Br. at 16-18. Furthermore, even if Christopher had not brought this issue to our attention, we still would have been able to raise it ourselves. *See Monroe Cnty. Bd. of Assessment Appeals v. Miller*, 570 A.2d 1386, 1388 (Pa. Cmwlth. 1990) ("It is well-settled that the timeliness of an appeal is a jurisdictional question which cannot be waived, and it may be raised at any stage of the proceedings by any party or by the court *sua sponte*.").

day deadline. Unlike other litigants, pro se prisoners cannot personally travel to the courthouse to see that the notice is stamped "filed" or to establish the date on which the court received the notice. Other litigants may choose to entrust their appeals to the vagaries of the mail and the clerk's process for stamping incoming papers, but only the pro se prisoner is forced to do so by his situation. And if other litigants do choose to use the mail, they can at least place the notice directly into the hands of the United States Postal Service (or a private carrier); and they can follow its progress by calling the court to determine whether the notice has been received and stamped, knowing that if the mail goes awry they can personally deliver notice at the last moment or that their monitoring will provide them with evidence to demonstrate either excusable neglect or that the notice was not stamped on the date the court received it.

*Smith v. Pa. Bd. of Prob. & Parole*, 683 A.2d 278, 281 (Pa. 1996) (quoting *Houston v. Lack*, 487 U.S. 266, 270-71 (1988)). Accordingly, appeals made by *pro se* incarcerated litigants are subject to what is commonly known as "the prisoner mailbox rule." *Com. v. Jones*, 700 A.2d 423, 426 (Pa. 1997).

Under the prisoner mailbox rule, a legal document is deemed "filed" on the date it is delivered to the proper prison authority or deposited in the prison mailbox. . . . A cash slip constitutes sufficient evidence to show compliance with the prisoner mailbox rule. . . . An affidavit as to the date of mailing may also be considered. . . . In order to benefit from the rule, [a *pro se* prisoner] bears the burden of proving that he timely deposited his . . . appeal in the prison mailbox.

*Kittrell v. Watson*, 88 A.3d 1091, 1097 (Pa. Cmwlth. 2014) (internal citations and parenthetical omitted); *accord* Pa. R.A.P. 121(f).

Here, Christopher had to file his initial petition for review no later than December 26, 2019, *i.e.*, 30 days after the mailing date of the Board's at-issue ruling, November 26, 2019. As already noted, Adams County did not receive that petition for review until December 30, 2019, or 4 days after the appeal window had closed.

Under the prisoner mailbox rule, this late receipt did not, in itself, render that petition for review untimely, but the burden rested upon Christopher to provide evidence showing that he handed his appeal paperwork to prison personnel or mailed it himself prior to the deadline. Despite our express entreaty to do so, Christopher failed to provide us with any such evidence.

Christopher nevertheless argues that his initial Adams County petition for review was timely filed, in light of the Superior Court's holding in *Commonwealth v. Patterson*, 931 A.2d 710 (Pa. Super. 2007).[3] In *Patterson*, a *pro se* incarcerated litigant was required to file his appeal no later than September 22, 2006, which was a Friday, but the record reflected that the trial court did not receive the inmate's notice of appeal until September 25, 2006, a Monday. 931 A.2d at 714. The Superior Court concluded that this filing was timely under the prisoner mailbox rule, despite the absence of evidence firmly establishing when the appeal had been mailed, because "September 23rd and 24th were weekend days. Thus, in order for the trial court to have received the notice of appeal by September 25th, it is likely that [Patterson] mailed his notice of appeal on or before September 22nd." *Id.* In essence, the Superior Court deemed it virtually impossible for Patterson to have sent his notice of appeal after the 30-day window had closed, in light of the date it was received, and, therefore, concluded that it was timely. *Id.*

Here, however, the window for Christopher's appeal closed on Thursday, December 26, 2019, and Adams County received his initial petition for review on Monday, December 30, 2019. While the difference of a single weekday may appear insignificant at first blush, it remains that this opens up the possibility that

---

[3] While it is well-settled that Superior Court decisions are not binding upon our Court, we recognize that they may serve as persuasive authority, which we may reference for guidance as needed. *Muntz v. Dep't of Transp.*, 630 A.2d 524, 525 (Pa. Cmwlth. 1993).

Christopher did not send that petition for review until after his appeal rights had lapsed. Given the aforementioned lack of substantive evidence regarding the date upon which Christopher sent his initial petition for review to Adams County, we could not accept Christopher's argument without engaging in speculation or conjecture. For us to do so would improperly relieve him of his burden to prove timeliness. *See Kittrell*, 88 A.3d at 1097. Consequently, *Patterson* is distinguishable from this matter and provides no basis, even on a persuasive level, for us to conclude that Christopher filed his initial petition for review with Adams County in a timely manner under the prisoner mailbox rule.

### III. Conclusion

In light of the foregoing analysis, we quash Christopher's Petition for Review due to lack of appellate jurisdiction.

_____
ELLEN CEISLER, Judge

8

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Richard A. Christopher III,      :
             Petitioner     :
                           :
     v.                    :  No. 1880 C.D. 2019
                           :
Pennsylvania Parole Board,     :
           Respondent   :

# **O R D E R**

AND NOW, this 17th day of March, 2021, it is hereby ORDERED that Petitioner Richard A. Christopher III's Petition for Review is QUASHED due to lack of appellate jurisdiction.

_____
ELLEN CEISLER, Judge